IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANINE GUTHRIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-189-ALM-KPJ |
| | § | |
| MARTIN O'MALLEY, | § | |
| *Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |
| | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Janine Guthrie ("Ms. Guthrie") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income ("SSI"). Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **AFFIRMED**.

## I.  APPLICABLE LAW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

**B.     Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[2] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)) (internal quotation marks omitted). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (per curiam)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.   BACKGROUND AND PROCEDURAL HISTORY

Ms. Guthrie was born in 1973, completed the twelfth grade, and last worked as a driver with "Uber" and "Lyft," two ride-sharing services, in 2019.³ *See* Tr. 61, 80, 218–19. On May 24, 2019, Ms. Guthrie filed an application for SSI. *See* Tr. 80; *see also* Tr. 193. In her application, Ms. Guthrie alleged disability since July 16, 2009,⁴ due to the following: epilepsy, depression, her right knee giving out, memory loss, left hip and lower back pain, stuttering, post-traumatic stress disorder ("PTSD"), difficulty comprehending, difficulty walking, her vision going blurry sometimes, light sensitivity, loud noises freaking her out, panic attacks, headaches, mood swings, and a traumatic brain injury ("TBI"). *See* Tr. 80–81.

The Social Security Administration (the "SSA") denied Ms. Guthrie's claim on September 24, 2019. *See* Tr. 114–17. On October 9, 2019, Ms. Guthrie secured representation, and on November 1, 2019, she requested reconsideration. *See* Tr. 118–19, 127–129. On December 16, 2019, the SSA denied Ms. Guthrie's request for reconsideration. *See* Tr. 132–34. On January 15, 2020, Ms. Guthrie submitted a written request for a hearing. *See* Tr. 135–37. On October 14, 2020, Ms. Guthrie's counsel advised the SSA that he was no longer representing Ms. Guthrie. *See* Tr. 161. On October 20, 2020, Administrative Law Judge John Martin (the "ALJ") set Ms. Guthrie's hearing for January 5, 2021. *See* Tr. 162–66.

On December 3, 2020, the SSA contacted Ms. Guthrie to discuss her upcoming hearing. *See* Tr. 302. During that conversation, the SSA provided information regarding Ms. Guthrie's right to representation and confirmed that she understood that right. *See* Tr. 302. Ms. Guthrie requested

---

³ Documents 8-1 through 8-9 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document and page numbers.

⁴ To be eligible for SSI benefits, a claimant must have filed "an application for SSI benefits." 20 C.F.R. § 416.202(g). Thus, despite alleging a disability dating back to 2009, Ms. Guthrie's alleged onset date ("AOD") is May 24, 2019—the day she filed her SSI application.

additional information regarding representation; in response, the SSA emailed Ms. Guthrie a notice advising her that she may "appoint an attorney or other person to act as [her] representative." Tr. 187, 302. The notice further advised that such representation may be free or on a contingency-fee basis. *See* Tr. 187 ("Some representatives may represent you for free. . . . Most representatives do not charge a fee unless your claim is successful and you receive benefits."). In addition, the notice advised that, in most cases, a representative cannot "charge a fee unless [the SSA] approve[s] it." Tr. 187 (emphasis omitted). Finally, the notice provided a list of organizations to help Ms. Guthrie find representation, as well as a list of organizations providing free legal assistance to qualifying individuals. *See* Tr. 187–90.

On January 5, 2021, the ALJ held a hearing, which was attended by Ms. Guthrie, Nicole Sens ("Ms. Sens"), who is Ms. Guthrie's daughter, and a vocational expert (the "VE"). *See* Tr. 50. Ms. Guthrie did not have representation at the hearing. *See* Tr. 50 ("The claimant appeared telephonically and was unrepresented."). The ALJ began the hearing by asking Ms. Guthrie whether someone had recently contacted her to "explain [her] right to representation." Tr. 51. Ms. Guthrie answered yes. Tr. 51. The ALJ asked Ms. Guthrie whether she understood her "right to representation." Tr. 51. Ms. Guthrie answered affirmatively. Tr. 51. The ALJ asked Ms. Guthrie whether she was "happy to go ahead" without representation. Tr. 51. Once again, Ms. Guthrie answered yes. Tr. 51. Ms. Guthrie stated that she wished to proceed without representation because she was "tired of waiting" and wanted to "get on with everything." Tr. 51. The ALJ advised Ms. Guthrie that, even if securing counsel caused a delay, it would not affect her benefits, or lack thereof, because her AOD would remain the same, regardless of when the decision was rendered. *See* Tr. 51.

On February 24, 2021, the ALJ issued an unfavorable decision denying Ms. Guthrie's claim. *See* Tr. 42. At step one, the ALJ found that Ms. Guthrie had not engaged in substantial gainful activity since May 24, 2019, the date of her application. *See* Tr. 34. At step two, the ALJ found that Ms. Guthrie had the following severe impairments: osteoarthrosis and allied disorders; neurocognitive disorders; trauma and stressor-related disorders; and obesity. *See* Tr. 34. At step three, the ALJ found that none of Ms. Guthrie's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 34–36. At step four, the ALJ found Ms. Guthrie had the RFC to:

> perform sedentary work . . . . Ms. Guthrie could not climb ladders/ropes/scaffolds. She could occasionally climb ramp/stairs. She could balance, stoop, kneel, crouch and crawl occasionally. Ms. Guthrie could not work at unprotected heights or around moving mechanical parts. She could not operate a motor vehicle as part of her job duties. She could perform simple, routine[,] and repetitive tasks but not at a production rate pace (e.g. assembly line work). Ms. Guthrie could frequently interact appropriately with supervisors. She could occasionally interact appropriately with coworkers and the public. She could make simple work-related decisions.

Tr. 36. The ALJ found that Ms. Guthrie's RFC made her "unable to perform any past relevant work" and, therefore, proceeded to step five. *See* Tr. 41. At step five, the ALJ determined that, "[c]onsidering t [sic] Ms. Guthrie's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that she could perform." Tr. 41. Relying on the VE's testimony, the ALJ determined that Ms. Guthrie could perform occupations such as sorter, inspector, and bench hand. Tr. 42. Accordingly, the ALJ concluded that Ms. Guthrie was not disabled within the meaning of the Social Security Act (the "Act"). *See* Tr. 42.

Ms. Guthrie requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 191–92. On October 7, 2021, the Appeals Council denied the request for review. *See* Tr. 5–8. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*,

530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). On March 10, 2022, Ms. Guthrie filed her appeal to this Court.[5] *See* Dkt. 1.

### III.   ANALYSIS

On appeal, Ms. Guthrie raises three arguments. Ms. Guthrie first argues that, due to her diminished cognitive abilities, she lacked the capacity to waive her right to representation. *See* Dkt. 11 at 14–17. Ms. Guthrie next argues that she did not effectively waive her right to representation. *See id.* at 17–18. Finally, Ms. Guthrie argues that the ALJ committed a *Stone* error by applying the wrong definition of "severe." *See id.* at 20–22. The Court considers each argument in turn and concludes that the decision of the Commissioner should be affirmed.

#### A.   Right to Representation

There is no constitutional right to representation at a social security hearing. *See Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. Unit B July 1981)). However, a claimant has a statutory right to representation. *See* 42 U.S.C. § 406. Any waiver of this right must be "knowingly and intelligently effected." *Gullett v. Chater*, 973 F. Supp. 614, 620 (E.D. Tex. 1997) (citing *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996)). A waiver is valid if the claimant is "given sufficient information to enable [her] to decide intelligently whether to retain counsel or proceed *pro se*." *See Norden v. Barnhart*, 77 F. App'x 221, 223 (5th Cir. 2003) (italics added) (citing *Clark*, 652 F.2d at 403–04). "'Sufficient information' includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded." *Id.* (citing *Clark*, 652 F.2d at 403–04); *see Freeman-Park v. Barnhart*, 435 F. Supp. 2d 597, 601 (E.D. Tex.

---

[5] A claimant has sixty days to file an appeal after receiving notice of the Appeals Council's decision. 20 C.F.R. § 416.1481. However, "[a]ny party . . . may request that the time for filing an action . . . be extended." *Id.* § 416.1482. If there is "good cause for missing the deadline," the time to file an appeal "will be extended." *Id.* In the present case, the Appeals Council extended the deadline, making Ms. Guthrie's appeal timely. *See* Tr. 1.

2006) (same). "Pre-hearing written notification alone may be inadequate." *Stansel v. Shalala*, No. 94-50120, 1994 WL 684761, at *1 (5th Cir. Nov. 18, 1994) (citing *Benson v. Schweiker*, 652 F.2d 406, 408 (5th Cir. Unit B July 1981)). However, where the pre-hearing notification provides adequate information regarding the right to representation, the ALJ need only remind the claimant of that right and confirm that she wishes to appear without representation. *See Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003).

### 1. Capacity

Ms. Guthrie argues that any waiver of her right to counsel "was not knowingly and intelligently effected." Dkt. 11 at 15. According to Ms. Guthrie, despite receiving "written notice from [the] SSA of her right to counsel," she was incapable of waiving that right due to her cognitive limitations. *See id.* at 15–16. Specifically, Ms. Guthrie contends that her seizure disorder and TBI caused her to have "diminished cognitive function and memory loss." *Id.* at 16. Consistent with those limitations, Ms. Guthrie argues that "[h]er medical records indicate the need to keep her estranged husband informed of treatment when he cannot go to her medical appointments." *Id.* Thus, Ms. Guthrie contends that her "limitations require additional assurances that her waiver was knowingly and intelligently made," which may "only be accomplished by postponement" of the hearing. *Id.* at 17. As the ALJ failed to postpone the hearing, Ms. Guthrie concludes that "[r]emand is required." *See id.* (citing *Earp v. Comm'r of Soc. Sec. Admin.*, 168 F. Supp. 2d 628 (E.D. Tex. 2001)).

The Commissioner argues that Ms. Guthrie had the capacity to waive her right to representation. *See* Dkt. 13 at 5. Specifically, the Commissioner distinguishes *Earp* on the basis that Ms. Guthrie "is not illiterate," nor was she "previously found disabled, based in part on mental retardation." *Id.* The Commissioner contends that Ms. Guthrie was "able to understand, carry out[,]

8

and remember instruction[s], but needs reminders to complete tasks." *Id.* Likewise, the Commissioner argues that Ms. Guthrie's mental conditions "did not wholly compromise her ability to function on a sustained basis." *Id.* at 6. Finally, the Commissioner contends that Ms. Guthrie's purported lack of capacity did not impact her ability to care for herself in addition to "her young autistic child." *Id.* Thus, the Commissioner concludes that Ms. Guthrie's "activities and abilities refute a finding that she was not able to validly waive representation." *Id.*[6] The Court agrees with the Commissioner.

The record indicates that Ms. Guthrie suffered from some "diminished cognitive function." *See* Tr. 875 ("It is my opinion that due to her seizure disorder and [TBI] she suffered in 2019[,] [Ms. Guthrie] has diminished cognitive function and memory loss that significantly affects activities of daily living."); Tr. 831 ("[Ms. Guthrie] had difficulty recalling the main theme of the stories, and remembered very few details."). However, the record also indicates that, despite these limitations, Ms. Guthrie possessed sufficient capacity to waive her right to counsel. After her accident, Ms. Guthrie retained the ability "to understand, carry out[,] and remember instructions." Tr. 832; *see* Tr. 102 ("[Ms. Guthrie] was oriented in all spheres and her judgment was in the average range and insight was fair."). Likewise, Ms. Guthrie had the ability to complete many daily tasks. *See, e.g.*, Tr. 102 (reporting that Ms. Guthrie makes meals, loads the dishwasher, and orders groceries). Furthermore, Ms. Guthrie lived with, and helped care for, her young son with autism. *See* Tr. 244 (recounting that she watches her son, gives him instructions, and plays with him). Finally, Ms. Guthrie sought and obtained representation twice, strongly suggesting "that she

---

[6] The Commissioner also argues that Ms. Guthrie "had the cognitive ability to work . . . as a medical assistant" and, therefore, could "validly waive representation." Dkt. 13 at 6. However, the record indicates that Ms. Guthrie worked as a medical assistant from February 2000 to July 2009—a decade before the accident purportedly impeding her cognitive abilities. *See* Tr. 225. Thus, this fact is irrelevant to the present inquiry.

9

knew how to obtain legal representation but merely neglected to do so." *Cf. Bunton v. Shalala*, No. 93-8746, 1994 WL 499637, at *2 n.4 (5th Cir. Aug. 22, 1994).

Ms. Guthrie's reliance on *Earp* is misplaced. In *Earp*, the claimant had severe intellectual disabilities arising from head injuries sustained at three years of age. *See Earp*, 168 F. Supp. 2d at 629. At the hearing, the claimant "testified that she did not know her address, she could not recall what schooling she had had, she has never worked for pay, that she cannot cook, she does not have a license, she receives help buying groceries, and she watches television." *Id.* at 632. Although the claimant received multiple written notices regarding her right to representation, she was "illiterate." *Id.* at 633. Thus, the notices were ineffective at apprising the claimant of her right to representation. As the court had "serious reservations whether [the claimant] fully understood what she was doing," it found that she had "not properly waived her right to counsel." *Id.* at 634.

Unlike in *Earp*, Ms. Guthrie received—and possessed the ability to read and understand—the notice advising her of her right to representation. *See* Tr. 187–90.[7] Indeed, Ms. Guthrie affirmed that she understood that right on December 3, 2020—more than a month before the hearing. *See* Tr. 302–03. Consistent with this acknowledgment, Ms. Guthrie contacted attorneys to represent her at the hearing but, according to her, they "wanted to postpone everything" while she "just want[ed] it over." *See* Tr. 51 ("I'm tired of waiting. I want this over[,] and I want to get on with everything."). At the hearing, Ms. Guthrie again acknowledged that she understood her right to representation but chose to proceed with the hearing anyway. *See* Tr. 51–52. Thus, *Earp* is factually distinguishable from the present case. Convinced that the record indicates that Ms. Guthrie had the capacity to waive her right to representation, the Court turns to whether she effectively waived that right.

---

[7] Ms. Guthrie acknowledges that she received the written notice of her right to representation and does not challenge its sufficiency. *See* Dkt. 11 at 15.

**2.      Waiver**

Ms. Guthrie contends that she did not have a meaningful opportunity to retain counsel and, therefore, did not effectively waive her right to representation. *See* Dkt. 11 at 17. On this point, Ms. Guthrie argues that "the ALJ should have asked when [she] found out she was not represented and spelled out in (cognitively appropriate terms) what a postponement to retain counsel would have potentially clarified for her and the approximate time it would have taken to be rescheduled." *Id.* Similarly, Ms. Guthrie contends that "it is unclear if any conversation about the fee structure of obtaining a representative was ever discussed with [her] or if she knew that free representation was available to her (other than via letter)." *Id.* This argument is meritless.

Although a pre-hearing notification may be insufficient by itself, so long as it provides adequate information regarding the right to representation, the ALJ need only remind the claimant of that right and confirm that she wishes to appear without representation. *See Castillo*, 325 F.3d at 552 ("We conclude the numerous written notices [the claimant] received—along with the ALJ's reminder to [the claimant] at the hearing of her right to counsel—sufficiently informed her of her right to an attorney, and that she validly consented to proceed without representation."); *Anders v. Colvin*, No. 12-cv-127, 2013 WL 1608249, at *6 (N.D. Tex. Mar. 1, 2013) (same), *R. & R. adopted*, 2013 WL 1569547 (N.D. Tex. Apr. 12, 2013); *Kirby v. Colvin*, No. 12-cv-3257, 2013 WL 12108134, at *3 (S.D. Tex. June 27, 2013) (same), *R. & R. adopted*, 2013 WL 12107664 (S.D. Tex. July 31, 2013). Ms. Guthrie does not challenge the sufficiency of her written notice, *see supra* n.7, which advised her that she may obtain representation for free or on a contingency-fee basis. *See* Tr. 187. Thus, the ALJ was only required to remind Ms. Guthrie of her right to representation and confirm her intent to proceed without it. The ALJ did so here. *See* Tr. 51 ("So, Ms. Guthrie, did someone contact you fairly recently and explain to you your right to representation?"; "And

11

do you understand your right to representation?"; "So, you do not want to take time and try to find counsel. You're happy to go ahead today. Is that what you're saying?"). Therefore, the record indicates that Ms. Guthrie validly waived her right to representation.

**B.   Stone Error**[8]

Ms. Guthrie argues that the ALJ committed a *Stone* error; that is, the ALJ applied the wrong definition of "severe" and, thereby, incorrectly evaluated the severity of her impairments. *See* Dkt. 11 at 20–21. According to Ms. Guthrie, this error prejudiced her by erroneously inflating her RFC. *See id.* at 21. Had the ALJ properly designated her seizure disorder as severe, Ms. Guthrie contends that he would have found her disabled. *Id.* The Commissioner does not dispute that the ALJ applied a faulty standard. *See* Dkt. 13. Instead, the Commissioner argues that any error was harmless because "the ALJ did not end his review at step two" and "included RFC restrictions to accommodate seizures." *Id.* at 12. The Court agrees with the Commissioner.

At step two, the ALJ must consider whether any of the claimant's impairments are severe. *See* 20 C.F.R. § 416.920(a)(4)(ii). In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit described the threshold for a severe impairment.

> Phrased in the negative, an "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

---

[8] In a single sentence, with no citation to the record, Ms. Guthrie also argues that the ALJ's RFC determination fails to consider some limitations created by her history of seizures. *See* Dkt. 11 at 21. Although insufficiently briefed, the RFC determination is supported by substantial evidence. The ALJ discussed Ms. Guthrie's seizures at length, *see* Tr. 37–38, 40–41, and determined "that medication effectively manages Ms. Guthrie's seizure disorder." Tr. 38; *see* Tr. 447 ("She has had no seizures since she left the hospital. Last known seizure was late February 2019 when she was traveling and forgot her medications."). Because the RFC determination is supported by substantial evidence, the Court concludes that Ms. Guthrie's argument is meritless. *See, e.g.*, *Robin W. v. Kijakazi*, No. 22-cv-1344, 2023 WL 5660153, at *8 (S.D. Tex. Aug. 31, 2023) (concluding the ALJ's RFC determination was supported by substantial evidence in part because the claimant's seizures "appear[ed] to be controlled").

*See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (alteration in original) (quoting *Stone*, 752 F.2d at 1101). "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work. Th[e] second step [of the sequential evaluation process] requires the claimant to make a *de minimis* showing." *See Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (internal citation omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). "ALJs are bound not just to use [the *Stone*] standard but also to cite it (or to an equivalent authority) in their written decisions; we presume that an ALJ applied the wrong severity standard if it does not." *See Keel*, 986 F.3d at 555 (citing *Stone*, 752 F.2d at 1106).

If the Court finds that a *Stone* error occurred, the Court must reverse and remand if the ALJ did not proceed past step two of the sequential evaluation process. *See Rollins v. Berryhill*, No. 17-cv-136, 2018 WL 2064781, at *5 (N.D. Tex. May 2, 2018) ("Automatic remand is only required in cases where the ALJ used the incorrect standard and did not proceed past step two." (collecting cases)). If, however, the ALJ found at least one severe impairment at step two and proceeded to later steps of the sequential evaluation process, the Court applies harmless error review. *See Keel*, 986 F.3d at 556 (explaining that even if the Court "were to conclude that the ALJ failed to properly apply the *Stone* standard, such a conclusion does not require an automatic reversal—if the ALJ proceeds past step two, we consider whether the error was harmless" (citations omitted)); *see also Connie G. v. Berryhill*, No. 17-cv-3342, 2019 WL 1294441, at *4 (N.D. Tex. Mar. 21, 2019) ("[H]armless error analysis is appropriate in deciding whether the ALJ's *Stone* error requires remand only in cases where the ALJ proceeds past step two in the sequential evaluation." (citing *Caperton v. Berryhill*, No. 17-cv-126, 2018 WL 1899306, at *3 (N.D. Tex. Apr. 19, 2018))); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (holding appellant's argument that the ALJ

erred in failing to find her back problems severe was not grounds for a remand because the case did not implicate the "non-severity" of plaintiff's condition since the ALJ continued through step four of the sequential analysis). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556 (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam)).

In the present case, the ALJ stated that "[a]n impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." Tr. 33. Under *Stone*, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond*, 892 F.3d at 817 (quoting *Loza*, 219 F.3d at 391). Quite plainly, the ALJ committed a *Stone* error. *See, e.g.*, *Jones v. Astrue*, 821 F. Supp. 2d 842, 850 (N.D. Tex. 2011) (finding a *Stone* error where "the ALJ stated that an impairment or combination of impairments is severe if it 'significantly limits an individual's ability to perform basic work activities'"); *Kirkland v. Comm'r, Soc. Sec. Admin.*, No. 20-cv-371, 2022 WL 4477694, at *2 (E.D. Tex. Sept. 24, 2022) (same).

However, the Court need not decide whether the ALJ improperly determined the severity of Ms. Guthrie's impairments because he found at least one severe impairment and proceeded to later steps in the sequential evaluation process. The Court therefore applies harmless error review. In so doing, the Court considers whether the ALJ addressed the impact of Ms. Guthrie's non-severe impairments, either singly or in combination with other conditions, at later steps of the sequential evaluation process, including when the ALJ formulated Ms. Guthrie's RFC. *See Williams v. Astrue*, No. 09-cv-103, 2010 WL 517590, at *8 (N.D. Tex. Feb. 11, 2010); *see also Milton L. C. v. Saul*, No. 20-cv-113, 2021 WL 3518532, at *10 (N.D. Tex. July 23, 2021) ("[H]ere,

the ALJ did reference all of Plaintiff's alleged impairments, as well as Plaintiff's additional symptoms, in the RFC discussion. Thus, even assuming the ALJ made an error in the step two severity discussion, 'there is no ground for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing all of Plaintiff's impairments.'" (internal citation omitted) (quoting *Jones*, 821 F. Supp. 2d at 851)), *R. & R. adopted*, 2021 WL 3516244 (N.D. Tex. Aug. 10, 2021); *Corbezzolo v. Wiley*, No. 20-cv-2150, 2021 WL 2673077, at *5 (S.D. Tex. June 29, 2021) ("[T]he question is whether [the] ALJ could have reached a different conclusion. Here, because the ALJ considered all of Plaintiff's impairments, severe and non-severe, in formulating the Plaintiff's RFC[,] any step two error was harmless.").

Here, as is "nearly always" the case, the *Stone* error was harmless because the ALJ proceeded past step two and considered Ms. Guthrie's history of seizures in his RFC determination. *See Kirkland*, 2022 WL 4477694, at *2. The ALJ stated that he "accommodated Ms. Guthrie's history of osteoarthritis, seizures[,] and obesity in the RFC finding by limiting her to a range of sedentary work with significant postural and environmental limitations." Tr. 38. "Thus, there is no ground for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing all of [the] impairments." *See Jones*, 821 F. Supp. 2d at 851.[9]

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **AFFIRMED.**

---

[9] In reaching her conclusion that the *Stone* error was harmful, Ms. Guthrie relies on *Kirkland*. This case is wholly inapposite. In *Kirkland*, the ALJ committed a *Stone* error and then "ended her analysis at step two," finding that none of the claimant's "impairments were severe." *Kirkland*, 2022 WL 4477694, at *2. As the ALJ applied the wrong standard and stopped at step two, automatic remand was warranted. *See id.* (citing *Rollins*, 2018 WL 2064781, at *5).

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 5th day of February, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE